We'll hear argument now in the case of Perez v. K & B Transportation. Ms. Davis. Good evening. Sarah Davis on behalf of the plaintiffs, Moses and Dee Perez. This matter comes before the court on appeal from the District Court's order, finding there was no genuine issue of material facts in granting summary judgment in favor of the defendants. We're asking this court to reverse the judgment and remand for trial. In granting summary judgment, Judge Rowland, sui sponte, held the plaintiff's experts inadmissible under Rule 702. There was no Dauberg hearing. You said sui sponte, but wasn't that... I thought you all offered them kind of in the course of the summary judgment briefing, right? In the kind of sir reply? The plaintiff's experts' depositions were attached in response to summary judgment. The sir, sir reply was only allowed by Judge Pallmeyer when it was before her. As to the independent witness, Claudio Lostello, because his deposition was taken after the briefing had been completed at the request of the defendants. And so the court granted the plaintiff an opportunity to brief only that additional information. So the foundational requirements for the experts were never part of the briefing. What did you file after the defense challenged the admissibility of those expert reports? The defense never challenged the admissibility of the expert reports under 702. In fact, the judge's memorandum says while the defense does not challenge the admissibility, they find them to be unreliable, and we agree. But there was never any argument made that they were inadmissible under 702 at any point during any of the briefings. In preparing the docket statement for this appeal, the plaintiff noted that the defendants have not met their burden of proving Wharton's domicile, that they have removed this matter from the circuit court of Cook County to the Northern District of Illinois, and they carry the burden of proving diversity. Would the panel like me to address that issue before we go into the actual judgment? I'll just go ahead and bite. Is your theory that we should assume that she obtained her Texas driver's license fraudulently? No, that's not our theory, Your Honor. She obtained her Texas driver's license in July of 2016 when she maintained a Texas apartment, but this case was filed and remanded in April of 2017, at which time she had, months prior, obtained a P.O. box and no longer was maintaining a residence. So I thought that the person basically who has established citizenship in the state is generally deemed to have established it and doesn't give it up until they establish a new citizenship someplace else. I don't have, I don't believe that, our position at the record is not clear as to where Wharton established citizenship. Is it Texas? I don't know, because every time she's been asked where her residence is, she gives a P.O. box or says she doesn't have one. The only thing she has told us under sworn testimony about Texas is that she, quote, visits her. She has, the record is devoid of any of the gravity, center of gravity facts that this court has instructed us that we are to provide. And that's after the defendants were given the opportunity to amend the record to provide the court with those center of gravity facts, both in the memorandum that the court asked for before full briefing on appeal and in the affidavit that they were granted leave to file to supplement the diversity issue. We still don't have those facts. But Ms. Davis, the difficulty... I can't help but think of... Ms. Davis, it's Judge Scudder. The difficulty that I have with your argument is, and maybe it's embedded in what Judge Hamilton is asking you, she has a Texas driver's license. There's no question about that. She testified that she stays with family members when she's not on the road, but otherwise she drives a rig. And I don't know what somebody that may be on the road 45 weeks a year is supposed to say with respect to domicile. I'm on the road a lot, but when I'm in Texas, which is where my driver's license is at, I stay with family. Why isn't that enough? I'm not sure that that isn't enough, Your Honor, but that's not what she said. She had a driver's license in Texas in March of 2016, but Galva tells us that a driver's license isn't enough. We know that she had an Indiana driver's license when the accident happened, but she was living in Texas. It's not always dispositive. Also, that wasn't what she said, I live in Texas when I'm not on the road. However, sometimes I'd stay with my sister, and she was specifically asked if she had a permanent residence, to which she answered no. The record just doesn't give us the fact that this court has repeatedly instructed us the litigants are required to provide in order to prove domicile in order to get diversity of jurisdiction. Ms. Davis, shifting to the merits, I have a question for you. I had some difficulty with your brief, and I had it on the same point in a few different places. One of the things that you say in a few different places, page 17 and page 23 are good examples of the opening brief, the blue brief, is you say that Wharton unequivocally testified that the truck was in 10th gear just before the collision, when she first saw Perez begin to lose traction. With all respect, I really wonder whether you're playing fair with the facts there. I read what Wharton said, and what Wharton said was that she did not say she was in 10th gear just before the collision. What she said was when she saw Mr. Perez start to slide, that she put her flashers on, and she began to break the rig and downshift. And in downshifting, she made it to what I think she approximated was third or fourth gear, and said in third or fourth gear the rig would be going 10 to 15 miles an hour. So my point with raising that is it seems to me that if you're going to challenge the district court's entry of summary judgment, you have to grapple with that fact. And I don't see where you've done so. Your Honor, this testimony on page 71 of her first deposition, and I can give you the document number, I don't have it in front of me. She says she was going 55 to 60 before the collision. The speed with which she was going before the collision is more instructive than the speed she was at at impact. The Carter case tells us that it is the duty of every driver to maintain a speed to which they can stop without striking the vehicle in front of them, a speed and a following distance so that they can stop without striking the vehicle in front of them. Everyone else that morning was going quite a bit below the speed limit, except for Wharton who on page 71 says she was going the speed limit, 55 to 60, which in her second deposition she says is 10th gear. That to me is what is instructive. Even when she begins to brake, she's unable to stop her vehicle in time and the collision occurs. So the district court is wrong to focus on the fact that she began downshifting and at the time of the collision was in 3rd or 4th gear and at an estimated speed of 10 or 15 miles an hour? That was the speed at the time of impact. So she was able to get her rig down to 10 to 15 miles per hour, but she was not able to stop it. So the speed at impact to me is not instructive. The speed at which she first had to start braking is what is instructive. If she had been going 10 to 15 miles per hour when she first started to brake, she would have stopped in time. Part of our argument is that what the district court focused on was the speed at impact, even though the testimony is that she was going much faster when she first saw Perez's vehicle start to lose traction. By her own testimony, her vehicle in ideal conditions will take 150 feet to stop, which will take 10 to 15 seconds. She testified she was traveling 8 seconds behind the Perez vehicle. The tollway records tell us she was traveling 5 seconds behind the Perez vehicle. Even if the Perez vehicle hadn't lost traction, she was on a collision course with this vehicle. If she's going 30 miles per hour or 20 miles per hour, she doesn't hit his car. Can I ask you, I'm struggling a little bit with exactly what's properly in the record and what's not here. If I remember correctly, Mr. Detallo, one of your experts, the reconstruction expert, offered the opinion, in essence, that Ms. Wharton's testimony, her version of this accident, was just physically impossible. Is that right? That's correct. If we were to find an error in excluding the Detallo report, but not the Grill report, what effect would that have on the case? It would not, because the testimony I just gave as the stopping distance for that rig was offered by Wharton. That's what she knew. She knew that and yet decided to keep a stopping distance that didn't allow her to stop in the event she needed to. Maybe you didn't understand my question. If you were allowed to rely upon the Detallo report, what effect would that have on the summary judgment decision? Well, the court relied heavily on Wharton's testimony as to what occurred in leading up to the collision. And it would, Detallo's report tells us that that's just not possible. There's not enough time and it additionally is a further question of fact. If Wharton's saying one thing and Detallo's saying that it's impossible, then the jury gets to weigh the credibility of the witnesses. That's how it would change the outlook at summary judgment. Even if Detallo's testimony isn't considered, it's still our position that there's ample fact within the record to get to the jury. Perhaps the argument that she was braking properly or that she was going 15 to 30, maybe that will carry the day. But that's ultimately for the jury to decide, not for the district court to decide based on affidavits and sworn testimony. There were conflicting facts about how this occurred. The district court completely ignored this court's precedent in Carter v. Williams and Zink v. Radewald. In Carter, this court said that as a matter of law, a vehicle has to be operated at a rate of speed where it can stop to avoid a collision. Ms. Davis, I think you're probably in your rebuttal time now, but you can make your own decision how to use it. I will then reserve the rest of my time for rebuttal. Thank you. Thank you, Ms. Davis. Ms. Murphy-Petros. Good morning, Your Honors, and may it please the court. Melissa Murphy-Petros for the defendants, K&B Transportation and Kara Wharton. I will start just kind of following my notes as I was taking them during counsel's argument. As to the experts and the decision to bar them, Judge Rowland did not act sui sponte. We did challenge them. We stated, as she noted in her opinion, defendants do not challenge the qualifications. That's true. But argue that the opinions are speculative and not based on facts of the case. In other words, the reliability component of Daubert. So that was out there. In any event, as this court noted in Lewis v. Sitko, Petroleum Corporation, even if a Daubert decision is made sui sponte, it can certainly still be affirmed because the reliability of expert testimony is so very important. So it was not done sui sponte. If it had been, it really would not matter. The exclusions were proper, nonetheless. As to jurisdiction, with respect to Ms. Wharton's domicile in Texas, as we stated in our brief, the record evidence of her deposition testimony, the supplemental record evidence, the affidavit that this court allowed us to file of Ms. Wharton demonstrates that she is, in fact, domiciled in Texas. She receives her mail there, such as pay stubs, credit card bills, packages, taxes. She has her commercial driver's license in Texas. She lives with her sister while she's in Texas. She was actually served with the original complaint in this case in Texas. She uses her Texas address, her P.O. box for federal income tax filings and the like. As it was pointed out in counsel's argument, Ms. Wharton is a long-haul truck driver, and she doesn't go home from work at the end of every day. She is on the road for weeks and maybe months at a time, and therefore is not constantly going back to Texas. But that certainly is her domicile, and both the record evidence and the supplemental record evidence support that fully. With respect to the accident itself, I think it's very important to note and to keep in mind that Mr. Perez and Ms. Wharton are the only two witnesses to the accident. Mr. Losiello is another driver who saw Mr. Perez spin out, but he did not see the accident itself. He made that point very clear in his deposition testimony. Mr. Perez personally believes, as he deposed, that Ms. Wharton was speeding, but he testified that he based this belief simply on the fact that she hit him. He did not see her before the impact. He does not know how fast she was going either before or at the time of impact. The fact that she hit him is simply not enough. The fact that this accident occurred is simply not enough to show negligence. And that's obviously very well and long established. With respect to the speed... Counsel, this is Judge Easterbrook. Yes. Why is it well established that the fact of a rear-end collision is not enough to show negligence? I thought the rule in Illinois was that a rear-end collision is effectively... speaks for itself. It shows there was... somebody was either not keeping enough distance or was speeding. So why isn't the fact of a rear-end collision enough to imply negligence? I was not able to find any recent case law in Illinois that stated that simply the fact of the accident was enough to imply negligence without anything more, such as without evidence of speeding, without evidence of drunk driving, which of course is not an issue here. Counsel, when you say recent cases, what do you mean? The plaintiff's brief cites some such cases. Is it your position that they have been disapproved more recently? The two cases that the plaintiffs rely upon for this point are both cases from this court from 1966. They're 54 years old. Both of those cases... So far as I know, counsel, unlike radioactive elements, cases don't have half-lives. They continue unless they are brought into question by newer authority or by a change in statutes or, in the case of federal cases, by some state decision saying, no, no, they've made their guess under Erie, but they guessed wrong. Are there such cases in Illinois suggesting that we have guessed wrong? No. No, there are not. No, there are not. But the more recent cases in the Illinois state courts are looking also not just at the fact that a rear-end accident occurred, but other evidence surrounding the accident. And here, you know, we... Yes, there was a rear-end accident. We have no other evidence that Ms. Wharton... There is actually no evidence, really, that Ms. Wharton was driving negligently before or at the time. Now, counsel, one more thing. I'm not sure, just as a matter of law, that other evidence is needed, but my question is, why couldn't a jury infer going at 55 to 60 at a time when conditions are so hazardous that other drivers are losing control of their cars at lower speeds enough to show going too fast for conditions? I'm not trying to figure out how this would be resolved. I'm trying to figure out whether there is a bona fide, as the cases say, a dispute of material fact that properly belongs to the domain of the fact finder. Yes, I understand. I think the answer here is that we just don't have evidence of the conditions at the time as Mr. Perez described them. Yes, Mr. Perez did lose control of his vehicle. He stated that he spun out on ice. He did not observe anybody else spinning out. There were other semi-trucks that he observed along the highway traveling at the speed limit, which was 55 miles an hour. So there simply is no evidence other than Mr. Perez saying, you know, I believe the weather was really bad. I believe she was driving too fast. Well, isn't the other than Mr. Perez an important qualifier? If you have evidence that it was snowy and icy and unsafe, the fact that the evidence is from the plaintiff doesn't make it not evidence. That is true. However, his further testimony that I believe she was driving too fast simply because she hit him. And that's what he said. That is speculation. And so we. Counsel. She herself, the driver herself said she was driving 55 to 60. Whether that is, quote, too fast for conditions is an inference that one would think would be drawn by the trier of facts. We know it was snowy. We know there was at least some ice. How fast is too fast under those conditions? Well, who's supposed to decide that, a judge or a jury? We believe that on the record here that the district court did resolve it properly, that there was not a material question of fact. I'm just I pardon the pause. I'm going through my notes to make sure that I have addressed the questions that were brought up not only to me, but to opposing counsel. And I think I have things covered. Does the panel have any further questions for me? Sorry, if I could just I'll try one. Do we have to believe Wharton's version of how the accident occurred to affirm in this case? No. And I assume you're you're referring to her testimony when she describes Mr. Perez's vehicle kind of going from one side of the highway to the other. No, you don't. Because, again, Mr. Perez is again is saying and has testified, you know, I think she was going too fast because she hit me. And also, you know, I would point out that plaintiff's two experts, that's their conclusion as well. I was interested in particular, Mr. Ditalo's conclusion that if she had been going if the accident had occurred and she described it, she should have been able to stop much, much faster after the point of collision than she did. Which also reflects on her speed just before the collision. Thank you. Thank you. If there are no further questions, we request affirmance. Thank you. Thank you, counsel. Anything further, Ms. Davis. Address comments by counsel quickly. The court, the defendants never did challenge the expert qualifications of the plaintiff. And that's on page five of the court's memorandum that the defendants do not challenge the expert's qualifications. So the plaintiff never had an opportunity to. No, but didn't they challenge the reliability, the speculative, that the opinions were speculative? They challenged the conclusion, but not being based on the facts of the case. So they challenged. That sounds like a dauber challenge to me. Well, they didn't go more further than saying they're speculative. There wasn't a full analysis. And from what's contained in the court's memorandum, the court didn't do a full analysis either, but rather took issue with the conclusion. If there had been a full analysis, I think we would have seen that Ditalo and Grill's methodology holds up. I think the arguments by counsel show us that defense and the district court really focused on the time of impact, but the negligence that caused this collision started before impact. It started when Wharton was traveling too fast for conditions and not keeping a safe following distance. And that's what Loffiello testified to, even if he didn't see the two impacts. He saw enough negligence, and that's what he testified to. And even if I assume what counsel said about Trooper Kenny was an accurate resuscitation of the record, which we don't, even if we assume all of that is true, it's still a question of facts for the jury to decide, not to be decided on the papers by the district court. And for that reason, we are asking the circuit to remand the matter for trial. Thank you. I have nothing further. Thank you, counsel. Case is taken under advisement.